**GARIEPY v. PEARSON et al.**

**Civ. A. No. 437–50.**

United States District Court,
District of Columbia, Washington, D. C.

April 29, 1952.

682

Frank J. Whalen, Jr. (of Spencer & Louisell), Washington, D. C., for plaintiff.

William P. Rogers (of Dwight, Royall, Harris), Koegel & Caskey, John Donovan, Washington, D. C., for defendants.

MORRIS, Judge.

This is an action brought by the plaintiff against the defendants to recover damages resulting from an alleged libel by the said defendant Drew Pearson over the radio station and facilities of the defendant American Broadcasting Company, Inc. The statement charged to be libelous, made by the defendant Pearson on January 30, 1949, was as follows:

"Detroit. The Justice and Treasury Departments have ordered the prosecution of Dr. Bernard F. Gariepy of Royal Oak, Michigan, in a strange income tax case indirectly involving Father Coughlin. Dr. Gariepy's defense is that Father Coughlin gave him $68,000 because of alienation of affections of Mrs. Gariepy by the radio priest. The Justice Department plans to prosecute Gariepy anyway."

The said defendant Drew Pearson is also alleged to have made the following statement on February 6, 1949:

"Despite denials, the income tax case of Dr. Bernard F. Gariepy, indirectly involving Father Coughlin, will be brought to trial. When that trial takes place we will see who was really telling the truth."

It is alleged in the complaint that the plaintiff married Bernard F. Gariepy on or about June 1, 1935, and continued to be his wife until she obtained a divorce from him on or about September 13, 1943; that the said Bernard F. Gariepy is the Dr. Bernard F. Gariepy meant and referred to in the alleged libel; that the plaintiff is the Mrs. Gariepy referred to in said alleged libel; that, by the words "Father Coughlin" in said alleged libel, is meant the Reverend Father Charles E. Coughlin, who was and is a duly ordained priest of the Roman Catholic Church, and pastor of a parish of said Church, to wit, the Shrine of the Little Flower, at Royal Oak, Michigan. The complaint further alleges that, by the words used in the alleged libel, the defendant Pearson meant and intended to mean, and was understood, as charging that the plaintiff, while married, led an unchaste life and was an unchaste woman.

To this complaint, answer was filed by the defendants, setting up numerous defenses. Depositions of the plaintiff, Mary G. Gariepy, Thomas J. Whitfield, and Clarence E. Kitchen have been taken and filed in the case, together with numerous exhibits. Several motions looking to discovery have been filed and hearings had thereon. The motion now under consideration is one for summary judgment filed by the defendants, in which it is insisted that the words in the alleged libel do not support the innuendo of unchastity and, therefore, are not defamatory of the plaintiff. The plaintiff has opposed this motion for summary judgment, insisting that the words used do support the innuendo of unchastity and are, therefore, defamatory, and hence summary judgment for the defendants should not be granted.

Undoubtedly a charge of alienation of affections, made in certain circumstances, constitute defamation where it falsely represents marital discord, and that without regard to any intimation or innuendo of unchastity, but here it is conceded that, the plaintiff and her former husband having been divorced something over five years prior to the alleged libel, there cannot be defamation, unless there is the intimation or innuendo that the plaintiff "while married, led an unchaste life and was an unchaste woman," as alleged in the complaint. It must be borne in mind that in this action there is no question involved as to whether or not the statement of the defendant Pearson was defamatory or libelous as to Father Coughlin. There, again, a charge that he alienated the affections of the plaintiff while she was the wife of her former husband might be libelous and defamatory as to him without there being the slightest intimation or innuendo of adultery.

As one of the defenses asserted by the defendants, it is claimed that the statement of Dr. Gariepy referred to in the broadcast was privileged, in that it was a report of news, which has been substantiated by testimony a few months later in the trial of Dr. Bernard F. Gariepy for tax evasion, in which trial he was convicted, that he had stated such would be his defense; and that such statement had been made by Dr. Gariepy is further supported by the depositions in the instant case. It is true that, if the statements of the defendant Pearson had been made some months later, after the evidence in the Gariepy case had been given, the broadcast statement would have been privileged, and no action would lie, even if the statement was defamatory, but the statement was made some months prior to that time, and it was not a statement issued by public authorities in the course of their public duty, and so it cannot be said to be privileged. Nor can the fact that it has been established that it truly represented what Dr. Gariepy had said give immunity to the defendants for repeating such statement, if it was defamatory as to the plaintiff and false. So the question turns, in this posture of the case, upon whether or not the words, as here used, could reasonably be understood to support

the innuendo of unchastity as charged in the complaint. If the reasonable and usual meaning of the words used in a statement do not support an innuendo which would make such words defamatory, it is the duty of the Court to determine that question, and here that would require the granting of defendants' motion for summary judgment. If the words used in the statement are reasonably susceptible of two meanings, one of which would support the innuendo making said words defamatory, and the other not supporting such innuendo, it is then the duty of the Court to submit to a jury the determination as to whether or not the words were intended and understood to be defamatory, and here that would require a denial of the defendants' motion for summary judgment.

■■■■■■ The term "alienation of affections," as generally and commonly used, conveys the idea of a change in mental attitude and nothing more. Certainly, in their common meaning, such words do not connote any unchastity on the part of any one. When one looks at the legal meaning of the term "alienation of affections," it also means a change in mental attitude of one spouse toward another, induced by a third party. Conduct on the part of such third party which brings about the alienation of affections of a spouse gives rise to an action by the injured spouse against the third party (except in certain jurisdictions where such action has been barred by statute). If a third party has adulterous intercourse with a husband or wife, the injured spouse has a right of action for that wrong, which is known as "criminal conversation." There unchastity is the gist of the wrong. There can be alienation of affections without the slightest unchaste conduct being involved. Indeed the reports are full of such cases, in many of which the action is against parents, relatives or other third parties obviously incapable of sexual intercourse with the spouse of the injured party.[1] There are also reported cases in which actions for

alienation of affections have been brought on the ground that the defendant, as a member or officer of a religious order, has by persuasion or teaching caused the plaintiff's spouse to be estranged with absolutely no intimation or innuendo of unchastity. There can be criminal conversation or adulterous conduct without there being an alienation of affections. It is true that, in some jurisdictions, in actions for alienation of affections, unchaste conduct may be charged and may be proved, but even there it is in no sense an element of the wrong of alienation of affections, but only one of the means by which the alleged alienation of affections can be accomplished. To say that, because unchaste conduct may be one of the means by which alienation of affections can be accomplished, the term "alienation of affections" means that unchaste conduct was involved is as fallacious as to say that a statement that one party intends to seek a divorce from a spouse is to charge that spouse with unchaste conduct because adultery may be a basis for securing a divorce. Neither the term "alienation of affections," nor the term "divorce" (except in a jurisdiction where adultery is the only ground upon which divorce can be granted) connotes unchastity without other or further statement that affords a reasonable basis for the conclusion that unchastity was intended. It is urged by the plaintiff here that the large amount of money which the defendant Pearson said that Dr. Gariepy had said was paid to him by Father Coughlin gives rise to the suspicion that something more was intended by the term "alienation of affections" than would otherwise be attributed to such term. Certainly the amount of money referred to could not give to the words used a meaning different from the natural meaning of such words, nor distort them into support for the innuendo asserted. If any intimation or innuendo accompanied the words which were used by the defendant Pearson, from a reading of the statement in its entire context, it is that the defendant Pearson did not believe the statement of Dr. Gariepy to be

[1]. In Michigan, the residence of the plaintiff, Dr. Gariepy and Father Coughlin, the legal action of "alienation of affections" was abolished by statute in 1935, except as to relatives, and no element of unchastity can be involved.

credible, and that such was also the view of the Justice Department.

A reporter of news, whether in the press or on radio, should be held strictly accountable for statements unfounded in fact which do injury to others. One ought not to be permitted to escape liability in such situation on the ground that the damaging statement is simply a repetition of what someone else has said. Neither, however, ought one reporting the news be charged with liability by giving statements made a strained and unusual meaning to afford basis for an evil innuendo where the usual meaning of such words are not evil.

For the reasons stated, the motion of defendants for summary judgment will be granted. Counsel will prepare and submit an appropriate order carrying this decision into effect.